Fell, J.</div>

---

# Zachariah McNaul, Trustee, *v.* Samuel Arnold, Jr., and Samuel Arnold, Sr., Appellants.

*Deed—Description—Street—Mistake.*

A deed described land as "Beginning at a post on State street." State street did not touch the land intended to be conveyed, but a turnpike which extended from the termination of State street did run along the land ; and as far as the traveling public was concerned there was nothing to indicate where the street ended and the turnpike began. The evidence showed that the turnpike was sometimes called State street. Another deed and petition as well as oral testimony tended to show that the turnpike was mistaken for a continuation of State street. *Held*, that in construing the deed, a point on the turnpike must have been in the contemplation of the parties when they used the words State street.

Argued April 20, 1896.    Appeal, No. 487, Jan. T., 1895, by defendants, from judgment of C. P. Clearfield Co., September Term, 1893, No. 175, on verdict for plaintiff.    Before Sterrett, C. J., McCollum, Mitchell, Dean and Fell, JJ. Affirmed.

Ejectment for a lot of land in Curwensville borough.    Before Gordon, P. J.

The facts appear by the opinion of the Supreme Court.

The court gave binding instructions for the plaintiff.

*Error assigned* was above instruction.

*Roland D. Swoope*, with him *W. C. Arnold*, for appellants.

*J. B. McEnally*, of *McEnally & McCurdy*, for appellee.

OPINION BY MR. JUSTICE DEAN, October 5, 1896:

This is an ejectment for about one hundred and ninety square yards of land in Curwensville, Clearfield county. It formed part of a large tract owned by William Irvin, who died in 1869; partition was then had of his estate, and the disputed piece made part of purpart No. 15, which was taken by one of the heirs, Ellen A. Irvin, in payment of a debt due her from the estate, and the others delivered to her a deed for it. She died intestate and unmarried February 28, 1878, and the title passed to her heirs at law, who, on the 20th of April following, conveyed a part of this purpart to McNaul, this plaintiff, by this description: " Beginning at a post on State street; thence by land of William Irvin's estate, south 30 1/2 degrees west 80 feet to a post; thence by land of said estate south 59 1/2 degrees east 180 feet to a post; thence by lot of Hiram Caldwell north 30 1/2 degrees east 80 feet to a post on line of State street; thence by said street north 59 1/2 degrees west 180 feet to a post and place of beginning."

On November 19, 1881, the same heirs conveyed to E. A. Irvin, among other land, the whole of this purpart 15, and he by deed quitclaimed to McNaul that part of 15 conveyed to him by the heirs on 20th of April, 1878. By virtue of these conveyances McNaul, the plaintiff, claimed all the land in dispute.

Defendants claimed under a deed from E. A. Irvin, dated August 19, 1884, to N. E. Arnold for the undivided one half of purpart 15, reserving the lot conveyed to McNaul, the plaintiff, but the description in the deed, as defendants averred, embraced the land in dispute; the title to the undivided half thus conveyed to N. E. Arnold, afterwards by sheriff's deed passed to Samuel Arnold, Sr., the other defendant, to whom by deed of February 25, 1893, E. A. Irvin conveyed the other undivided half of purpart 15.

The learned judge of the court below being of opinion the description in the first deed of the Irvin heirs to McNaul, on

April 20, 1878, embraced the land in dispute, directed peremptorily a verdict for plaintiff, and we now have this appeal by defendants, who assign fourteen errors, arguing from all of them, either the case should have been submitted to the jury, or that there should have been a binding instruction to find for defendants.

It will be noticed, as undisputed facts, that the title to the whole of purpart 15 was, at the date of the first deed, April 20 1878, in the heirs of Ellen A. Irvin, who by metes and bounds conveyed to this plaintiff.

The exact location of the boundary at the north, State street, is in dispute, and as the starting point is a post on that boundary, the quantity of land embraced within the boundaries is larger or smaller, according to the location of the post. The description says: " Beginning at a post on State street." There was no State street at this point; it was the northwestern corner of the lot, and State street, a street of the borough of Curwensville, terminated at the southwestern corner of the adjoining lot of Hiram Caldwell, and if this street had been continued in a straight line, to the northwest corner, then, starting from a post on the street and running around the track according to the courses and distances in the deed, the disputed piece would be outside plaintiff's description, and would not belong to him.

But, from the termination of State street at the Caldwell lot, there ran an open highway, with a course deflecting to the north of it, known as Erie turnpike, and so far as the traveling public was concerned, there was nothing to indicate where the street ended and the turnpike began. If the place of beginning had been the corner of Caldwell's lot, thence by the line of State street to a corner, the defendants might have stood with safety on the description in the deed, for there was such a point of beginning, and it might have been said the intention was to continue the line of that street; but the place of beginning was at a post at the northwest corner on State street; there was in fact no such street there; there was, however, a turnpike, and when the description is one hundred and eighty feet from the Caldwell corner along line of State street to place of beginning, it is an impossible line so far as name was concerned, and must have meant the turnpike, following up which alone would stop the distance at the place of beginning on a highway.

It was then an error in name to say the starting point was State street. Was it intended to be the Erie turnpike? The northern boundary of purpart 15 in the proceedings in partition is the turnpike; the deed of E. A. Irvin, in August, 1884, for the undivided half of 15 to N. E. Arnold, one of defendants, and which is expressly intended to exclude the McNaul lot, speaks thus: "Beginning at a post on State street and corner of Friends' Meeting House lot, thence north by the turnpike."

This is the same starting point as in McNaul's deed, and it treats the turnpike as a continuation of State street; if the post were on the line of State street extended from the Caldwell corner, then the line by the turnpike in Arnold's deed was a mistake, for the post was far south of it. All the deeds clearly show that the turnpike was adopted for purposes of description, as a continuation of State street, and not that State either was or would be continued in a straight line from where by the borough plot it was laid out and terminated. Further, if State street was continued on West from the Caldwell corner the same course as it had in the borough, defendants, after the date of their deed, erected their house upon thirty-eight feet of it, still, however, keeping to the south of the turnpike. There is then the positive testimony of E. A. Irvin, the grantor in the deed to defendants, that in the negotiations preceding the deed it was understood the land fronting the meeting house up to the turnpike had already been conveyed to McNaul as trustee, and was not included in the conveyance; he further states the highway in front was sometimes called State street and sometimes the turnpike. Samuel Arnold, Sr., when called, does not contradict this testimony, but goes further, and says Irvin told him he did not want to convey the strip in front of the Quaker meeting house, because it belonged to the street; he corroborates Irvin in his statement that the land was reserved from his deed. Taking the descriptions in the partition and all the deeds with the oral testimony the starting point was, without doubt, at a post on the line of the turnpike, mistakenly called State street in the deed, because it was on the turnpike leading to that street, and one hundred and eighty feet beyond where the street by borough ordinance terminated.

The contention of appellants that, even if State street were

not laid out at the time, nevertheless bounding the lot by that street was a dedication to public use of a street in line with that laid out in the borough, is untenable.   The evidence conclusively shows the conveyance to McNaul was of a lot fronting on the turnpike and by mistake called State street, therefore the intention to dedicate had no existence.   On the whole evidence the learned judge of the court below could not do other than direct a verdict for plaintiff, for the defense rested on the merest scintilla of evidence.

The judgment is affirmed.